UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
WEBER CAPITAL LLC,

                        Plaintiff,

          v.

MICHAEL RACANIELLO,

                    Defendant.
---------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

24-CV-6258
(Komitee, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Weber Capital LLC filed this breach of contract action against Defendant Michael Racaniello on September 6, 2024.  Dkt. No. 1.  Plaintiff seeks to recover for a lost investment totaling $515,000, plus costs.  Dkt. No. 47 ¶¶ 1, 10, 17; Dkt. No. 40-9 at 2; 52 at 2.[1]

Currently pending before this Court, on referral from the Honorable Eric R. Komitee, United States District Judge, is Plaintiff's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2).[2]  *See generally* Dkt. Nos. 40, 40-10, 52; *see also* Referral Order dated October 20, 2025.  Plaintiff also seeks dismissal of Defendant's counterclaim.  *See* Dkt. No. 40-6 ¶ 7; 52.  For the reasons set forth below, the undersigned respectfully recommends that the Court grant Plaintiff's motion for default judgment and grant Plaintiff's request to dismiss Defendant's counterclaim with prejudice.

---

[1] Page citations are to the ECF-stamped pages, unless otherwise stated.

[2] Plaintiff's motion is docketed, incorrectly, as a motion for "Sum Certain Default Judgment" pursuant to Rule 55(b)(1).  Plaintiff's submission, however, demonstrates that it is indeed a motion under Rule 55(b)(2), and contains all necessary items required therein.  *See* Dkt. No. 40; Fed. R. Civ. P. 55(b)(2).

## I.   Background

### A.   Factual Allegations

The following facts—taken from the Fourth Amended Complaint (Dkt. No. 47), Plaintiff's motion, and the attachments filed in support thereof—are assumed true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [the defendant's] default, a court is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor").

Plaintiff is a limited liability company "duly registered and doing business in the state of New York." Dkt. No. 47 ¶ 2. The sole member of Weber Capital LLC, Mayer Weber, is a citizen of the state of New York. *Id.* ¶ 5. Defendant, an individual citizen, is a resident of the state of New Jersey. *Id.* ¶ 3. To induce Plaintiff to enter into a purchase and investment agreement of stocks held by Advanced Bioceuticals Limited ("ABL") pursuant to a Private Placement Memorandum ("PPM"), Defendant guaranteed the repayment of Plaintiff's entire investment. *Id.* ¶¶ 10-11. In furtherance of this guarantee, the parties executed two Unconditional Personal Guarantees (the "UPGs") guaranteeing the repayment of Plaintiff's $515,000 investment. *Id.* ¶ 12.

On November 10, 2020, the parties executed the first UPG for an investment in certain stocks held by ABL in the amount of $250,000 (the "$250,000 UPG"). *Id.* ¶¶ 12-13; *id.* at 7-11.[3] The $250,000 UPG contains the following obligation provision:

> Obligation of Guarantors. The Guarantors [*sic*] [(Defendant)] hereby jointly and severally guarantee the prompt payment of the purchase price and investment to the Creditor [(Plaintiff)] and his successors, and assigns. The Guarantor acknowledges that this Guarantee is a guarantee of payment and the Guarantor's obligations under this Guarantee are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise

---

[3] Within both UPGs, Defendant is referred to as the sole "Guarantor," even though some paragraphs mistakenly refer to the plural "Guarantors." *See* Dkt. No. 47 at 7, 13.

constitute a defense to this Guarantee and the obligations of the Guarantor under this Guarantee or the obligations of any other person or party.

Dkt. No. 47 7.  The $250,000 UPG also contains the following liability provision:

Liability on Default. All liability of the Guarantor to the Creditor shall mature immediately, without notice or demand, and become due and payable forthwith upon the occurrence of any of the following acts or events by or with respect to the Guarantor: (a) Creditor has not been paid the sums of $250,000.00 on or before February 28th, 2021; (b) a default under the Private Placement Memorandum; (c) dissolution or termination or a cessation of business, in case of the Maker; (d) insolvency or inability to meet obligations as they become due; (e) filing of a petition for relief in bankruptcy.

*Id.*  The $250,000 UPG is signed by the sole member of Plaintiff, Mayer Weber, and Defendant. *Id.* at 11.

Defendant executed a second UPG guaranteeing the repayment of Plaintiff's additional $265,000 investment in ABL (the "$265,000 UPG"). *Id.* at 13-14.  The $265,000 UPG contained the same "Obligation of Guarantors [*sic*]" provision as the $250,000 UPG, and the same "Liability on Default" provision except the amount in subsection (a) is $265,000 and the trigger date is February 22, 2021. *Id.* at 13.  The $265,000 UPG is signed by Defendant. *Id.* at 14.

As stated above, both UPGs were executed in connection with the PPM. *See* Dkt. Nos. 41-2; Dkt. No. 47 ¶¶ 10-11.  The parties to the PPM are ABL and Rise Jersey Corp ("RJC"). Dkt. No. 41-2 at 1.  RJC is related to Plaintiff because its address is located at "199 Lee Ave #900, Brooklyn, New York, 11211" (*id.*), and both UPGs associate Plaintiff with the "entity" located at this exact address: "FOR VALUE RECEIVED from [Plaintiff], or an entity designated thereby with an address of 199 Lee Ave #900 Brooklyn New York 11211." Dkt. No. 47 at 7, 13.  Defendant is associated with ABL because ABL owns 100% of the equity interest in Nass Valley Gateway Ltd ("NVG"), and Defendant is the CEO of NVG. Dkt. No. 41-2 at 1.  The PPM sets forth that

for consideration of $250,000, ABL will issue five million registered common shares of NVG at pricing of $0.05 per share to RJC. *Id.*[4] The PPM is signed by Defendant. Dkt. No. 41-2 at 18.

In support of the default judgment motion, Plaintiff attached confirmation of wire transfers to ABL and NVG. Dkt. Nos. 40-6; 40-7; 40-8; 49. The payments total $515,000: a payment made on October 30, 2020 for $100,000 to NVG (Dkt. No. 40-7); a second payment made on October 30, 2020, for $150,000 to NVG (Dkt. No. 40-8); a third payment made on February 4, 2021, for $200,000 to ABL (Dkt. No. 41-1 at 3); and a fourth payment made on February 8, 2021, for $65,000 to ABL (*id.* at 3).

Plaintiff represents that Defendant has failed to reimburse Plaintiff's $515,000 investment, as agreed upon in the UPGs. Dkt. No. 47 ¶ 16; Dkt. No. 40-9 at 3-4. Repayment of both UPGs were due by February 2021. *See* Dkt. No. 47 ¶ 15.[5] But to date, no repayment has been made. Dkt. No. 47 ¶ 16; Dkt. No. 40-9 at 3-4.

Both the $250,000 UPG and the $265,000 UPG contain the following clauses:

(a) Any legal action or proceeding with respect to this guaranty may be brought in the courts of the State of New York or the United States of America for the Eastern District of New York, and, by execution and delivery of this guaranty, Guarantor hereby accepts generally and unconditionally, the jurisdiction of the aforesaid courts. Guarantor hereby irrevocably waives, in connection with any such action or proceeding, (I) trial by jury, (II) any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions and (III) the right to interpose any setoff, non-compulsory counterclaim or crossclaim.

---

[4] The PPM is dated February 3, 2021 (Dkt. No. 41-2 at 1), which is after the $250,000 UPG was signed in November 2020 (Dkt. No. 47 at 11), and before the $265,000 UPG was signed on February 22, 2021 (*id.* at 14). Accordingly, the PPM does not reference how many shares would be issued in connection with the $265,000 payment, but the $265,000 UPG references the PPM. Dkt. No. 47 at 13.

[5] The $250,000 UPG's due date is February 28, 2021. Dkt. No. 47 at 7. The $265,000 UPG's due date is February 22, 2021, the same date that the $265,000 UPG was signed. *Id.* at 13. The Complaint alleges that repayment of both UPGs were due on February 10, 2021, which is not possible given that the $265,000 UPG is dated February 22, 2021. *Id.* ¶ 15. In any event, repayment of both UPGs were due by February 2021.

(b) Guarantor irrevocably consents to the service of process of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by certified mail, postage prepaid, to Guarantor at its address specified in this guaranty. Nothing herein shall affect the right of the payee to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against any guarantor in any other jurisdiction.

Dkt No. 47 at 9-10, 13-14 (citation modified).

## B.      Relevant Procedural History

Plaintiff commenced this action on September 6, 2024. *See* Dkt. No. 1. A summons was issued to Defendant that same day. *See* Dkt. No. 3.

On September 12, 2024, the Court ordered Plaintiff to show cause as to why this case should not be dismissed for lack of subject-matter jurisdiction. *See* Text Order dated September 12, 2024. Plaintiff was ordered to plead the identity and citizenship of each individual of Weber Capital to properly establish that diversity jurisdiction is satisfied, pursuant to *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012), by September 23, 2024. Text Order dated September 12, 2024. Plaintiff failed to respond. The Court issued another Order on September 26, 2024, indicating that if a response is not forthcoming by October 4, 2024, the Court will dismiss the case. *See* Text Order dated September 26, 2024.

On October 1, 2024, Plaintiff filed the First Amended Complaint, wherein Plaintiff alleged diversity jurisdiction by adding that "[t]he sole member of Weber Capital, LLC, is a citizen of the State of New York." Dkt. No. 7 ¶ 5. Also on October 1, 2024, Plaintiff submitted a certificate of service of the First Amended Complaint on Defendant at his address and submitted a Request for Certificate of Default against Defendant. *See* Dkt. Nos. 9, 10. On October 22, 2024, the Clerk of the Court denied Plaintiff's Request for Certificate of Default because Plaintiff did not file an Affirmation in Support of the Request for Certificate of Default as well as the proposed Certificate

5

of Default, and otherwise did not comply with Local Civil Rule 55.1.  *See* Text Order dated October 22, 2024.

On October 26, 2024, Plaintiff filed a second Request for Certificate of Default against Defendant, which was denied a second time because "it is not clear if Plaintiff has properly served Defendant."  *See* Text Order dated October 26, 2024.  According to Dkt. No. 1-1, Defendant had "an address at 76 Deepwater Circle, Manalapan, New Jersey 07726"  (the "Deepwater Circle address").  The Request for a Certificate of Default, however, was sent to "76 Maplewood Circle, Manalapan, [New Jersey]"  (the "Maplewood Circle address").  *See* Dkt. No. 11; *see also* Text Order dated October 26, 2024.  The Court ordered Plaintiff to file a letter with the Court providing an update regarding contact information and a correct address for Defendant.  *See* Text Order dated October 26, 2024.  Plaintiff filed a letter with the Court on October 27, 2024 stating that the Maplewood Circle address was "inadvertently indicated" but service was, in fact, made on Defendant at the Deepwater Circle address.  *See* Dkt. No. 12 at 1.  Further, Plaintiff alleges that Defendant designated the Deepwater Circle address as the address to receive mailings, but Plaintiff's Summons and Complaint were returned as undeliverable.  *See id.*; Dkt. No. 12-3.  The letter also alleges that Defendant has active email addresses.  Dkt. No. 12 at 1.  Plaintiff also included an affirmation of service (Dkt. No. 12-1), receipt of service to Defendant at the Deepwater Circle address (Dkt. No. 12-2), and a copy of the envelope labeled "RTS" or Return to Sender (Dkt. No. 12-3).

On October 27, 2024, the Court directed Plaintiff to email a copy of the Summons and Complaint to the email addresses listed for Defendant in Dkt. No. 12.  *See* Text Order dated October 27, 2024.  On the same date, Plaintiff served copies of the Summons and Complaint, Court

Docket Sheet, and the exhibits contained in Dkt. Nos. 12-1, 12-2, and 12-3 on Defendant via email. *See* Dkt. No. 13.

On November 1, 2024, Plaintiff alerted the Court that it had yet to hear back from Defendant. *See* Dkt. No. 14. Also on November 1, 2024, the undersigned received an email from Defendant requesting a thirty-day stay of all deadlines while he sought to secure legal representation, which the Court granted. *See* Text Order dated November 1, 2024.

On November 27, 2024, Defendant emailed the undersigned for a two-week extension of the stay in order to finalize retention of legal counsel. *See* Text Order dated November 27, 2024. The Court granted Defendant's application. *See id.* The Court ordered Defendant to respond to the Complaint by December 16, 2024. *See id.*

No response was filed by Defendant. On December 18, 2024, having received no response by Defendant, Plaintiff wrote to the Court requesting that it enter default judgment against Defendant for failure to respond. *See* Dkt. No. 15.

After the Court ordered Defendant to respond again (*see* Text Order dated December 18, 2024), counsel filed a notice of appearance on behalf of Defendant on December 20, 2024. *See* Dkt. No. 16. On January 3, 2025, Defendant filed his Answer to the Complaint, along with a counterclaim against Plaintiff. *See* Dkt. No. 18.

After Defendant filed his Answer, the Court requested both parties attend an in-person conference. *See* Dkt. Nos. 19-20; Text Order dated January 6, 2025. In preparation for this conference, both parties were asked to complete and file a proposed Discovery Plan and Scheduling Order. *See* Text Order dated January 6, 2025.

On February 12, 2025, Defendant's counsel filed a motion withdrawing as counsel and requesting to retain a lien against Defendant. *See* Dkt. Nos. 21 at 2; 21-2; 21-3. Defendant's

counsel noted that Defendant "has been completely non-respondent [*sic*]" and failed to pay his retainer. Dkt. No. 21-1 ¶¶ 7-10. The Court granted Defendant's counsel's motion in part, directing the Clerk of Court to terminate him from the docket, but reserving decision on affixing a lien at this time. *See* Text Order dated February 12, 2025. Additionally, the Court ordered Defendant to inform the Court by February 22, 2025 whether he wished to appear *pro se* going forward. *Id.* The February 12, 2025 Text Order was served on Defendant. Dkt. No. 22. Upon Defendant's failure to respond to the Court's directive, the Court *sua sponte* extended time for Defendant to respond to the Text Order dated February 12, 2025, and stated that Defendant "is advised that his failure to abide by Court orders may result in sanctions against him, including entry of a notation of default." *See* Text Order dated March 4, 2025. The March 4, 2025 Order was served on Defendant. *Id.*

On March 19, 2025, the Court rescheduled the in-person initial status conference and directed that it be held via phone, and served a copy of the Order on Defendant. Text Order dated March 19, 2025. Plaintiff also served a copy of the March 19, 2025 Order rescheduling the initial status conference on Defendant via email. Dkt. No. 24.

On March 24, 2025, Defendant failed to appear at the initial status conference. *See* Minute Entry dated March 24, 2025. The Court ordered Defendant to show cause as to why he failed to appear at the conference by March 28, 2025, which contained a warning that "[f]ailure to comply with this order may result in a report and recommendation that default judgment be entered against [Defendant] in this action." *Id.* Moreover, the Minute Entry dated March 24, 2025 was served on Defendant via mail and email. *Id.*

Defendant failed to respond to the Court's March 24, 2025 order to show cause. *See* Text Order dated March 31, 2025. On March 31, 2025, the Court *sua sponte* extended Defendant's

time to respond to the Court's Order. *Id.* The *sua sponte* extension again advised Defendant "that failure to comply with this and other of the Court's Orders will result in sanctions against him, including possibly default judgment." *Id.* The Court served a copy of the Order on Defendant via mail and email. *Id.*

Because Defendant did not respond, Plaintiff was directed by the Court to request a Certificate of Default from the Clerk of Court. *See* Text Order dated April 16, 2025. After denying Plaintiff's request for Certificate of Default three times for failure to comply with Local Civil Rule 55.1 (*See* Dkt. Nos. 26-30; Text Order dated April 21, 2025; Text Order dated April 25, 2025; Text Order dated May 1, 2025), the Clerk of Court certified Plaintiff's fourth request for Certificate of Default Judgment against Defendant. *See* Dkt. Nos. 31-32.

On June 15, 2025, Plaintiff filed a motion for sum certain default judgment, which was referred to the undersigned. *See* Dkt. No. 33; Referral Order dated June 17, 2025. Plaintiff's motion, however, was deficient, as Plaintiff did not establish compliance with the Servicemembers Civil Relief Act ("SCRA"). *See* Text Order dated August 18, 2025. On September 3, 2025, Plaintiff filed an affidavit by Mr. Jacob Weis, a business associate of Defendant, stating that Defendant is not currently serving in the U.S. military. *See* Dkt. No. 34. At the undersigned's direction, Plaintiff later filed a Status Report pursuant to the SCRA confirming Defendant has never served, nor currently serves, in the military. *See* Dkt. No. 36; *see also* Text Order dated September 11, 2025.

On September 30, 2025, Plaintiff filed a declaration requesting that sum certain default judgment be entered against Defendant. *See* Dkt. No. 37. The undersigned held a telephonic status conference on October 8, 2025 to discuss Plaintiff's request for sum certain default judgment against Defendant. *See* Minute Entry dated October 8, 2025. Defendant did not appear for this

9

status conference. *Id.* During the status conference, the Court noted that Plaintiff may not pursue a request for sum certain default judgment because Defendant answered Plaintiff's Complaint and filed a counterclaim. *Id.* Accordingly, the Court noted that Plaintiff must file a motion for entry of default judgment pursuant to Rule 55(b)(2) instead. *Id.* Following the status conference, Plaintiff withdrew his request for sum certain default judgment and filed the instant motion for default judgment on October 16, 2025. *See* Dkt. No. 40. Plaintiff's counsel is not seeking attorneys' fees or pre-judgment interest. Minute Entry dated Oct. 8, 2025. However, Plaintiff seeks $402 in costs according to Plaintiff's Proposed Judgment. Dkt. No. 40-10. On October 20, 2025, Judge Komitee referred the motion to the undersigned for a Report and Recommendation. *See* Referral Order dated October 20, 2025.

On November 20, 2025, the Court entered an Order noting that the Amended Complaint references Exhibits A and B (*see* Dkt. No. 7 ¶¶ 13, 14), but no exhibits are attached to the Amended Complaint. *See* Text Order dated November 20, 2025. The Court added that "Plaintiff also appears to have served only the original complaint (Dkt. No. 1) as part of its motion for default judgment (*See* Dkt. No. 40 at 2)." Text Order dated November 20, 2025. The Court ordered that, by November 24, 2025, Plaintiff shall file (1) an amended complaint with the referenced exhibits and (2) a supplement to its motion for default judgment with a copy of the amended complaint with exhibits. Plaintiff shall serve a copy of the aforementioned documents on Defendant and file proof of service by November 24, 2025. *Id.*

On November 21, 2025, Plaintiff filed the Second Amended Complaint. Dkt. Nos. 43, 44. Also, on the same day, the Court noted that the Second Amended Complaint still did not comply with the Court's November 20, 2025 Order, in which the Court ordered Plaintiff to file and serve an amended complaint that includes the referenced exhibits attached to the properly-filed amended

10

complaint.  Text Order dated November 21, 2025.  Plaintiff then filed a free-standing exhibit. Dkt.

No. 45.  Plaintiff subsequently filed the Third Amended Complaint.  Dkt. No. 46.  On December

12, 2025, the Court issued the following Order:

> The Court is in receipt of Plaintiff's third amended complaint (Dkt. No. 46), however, it appears as though the included 'Exhibit B,' see Dkt. No. 46-2 is not the 'true and complete copy of the UPG in the amount of $265,000[,]' referenced in paragraph 14 of such third amended complaint.  By December 17, 2025, Plaintiff is directed to refile its third amended complaint, attaching therewith both unconditional guarantees allegedly executed by Defendant, as were appended to the original complaint at Dkt. No. 1-1 and 1-2.
>
> Additionally, Plaintiff shall file a supplement to its motion for default judgment [40] including a copy of the aforementioned updated amended complaint with corrected exhibits comprised of the unconditional guarantees allegedly executed by Defendant.  Plaintiff shall serve a copy of the aforementioned documents on Defendant and file proof of service by December 17, 2025.  Such proof of service shall denote which addresses were delivered to and by what means.

Text Order dated December 12, 2025.

On December 12, 2025, Plaintiff filed the Fourth Amended Complaint with exhibits, which

is the operative pleading.  Dkt. No. 47.[6]  Plaintiff filed an attorney affirmation as to damages, a

statement that Defendant's counterclaim is "without merit," and a waiver for any claim for pre-

judgment interest and attorneys' fees.  Dkt. No. 49.  Plaintiff also filed a document regarding

Defendant's non-military status pursuant to the SCRA.  Dkt. No. 50.  Plaintiff further filed the

attorney's supplemental declaration in support of the motion for default judgment.  Dkt. No. 52 at

1-2.  Finally, Plaintiff filed an affidavit of service of Dkt. Nos. 47, 49, 50, and 52.  Dkt. No. 51.

---

[6] Plaintiff again requested a sum certain judgment under Rule 55(b)(1), which as discussed above in n.2, is not correct because Plaintiff's submission demonstrates that the motion is brought under Rule 55(b)(2).

## II.   **Default Judgment**

### A.   **Standard of Review**

Plaintiff seeks default judgment against Defendant.  Dkt. No. 40.  "Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 114 (E.D.N.Y. 2025) (explaining, "the Clerk of Court enters a party's default after an affidavit or other evidence shows that the 'party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.'" (citing Fed. R. Civ. P. 55(a))).  At the second step, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505 (citing Fed. R. Civ. P. 55(b)); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011).

The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" *Gomez v. W. Shore Inn Rest., Inc.*, No. 22-CV-277 (EK) (CLP), 2023 WL 5337864, at *3 (E.D.N.Y. June 30, 2023), *report and recommendation adopted*, 2023 WL 5334415 (E.D.N.Y. Aug. 18, 2023) (citation omitted)).  A defendant may fail to defend by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial, or by failing to comply with discovery orders." *Id.* (citation modified) (first quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); and then citing *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013)); *see also SEC v. Simeon*, No. 21-CV-5266 (ARR) (LGD), 2026 WL 73973, at *3 (E.D.N.Y. Jan. 9, 2026) (quoting the same language) (first quoting *Mickalis Pawn Shop*, 645 F.3d at 129; and then citing *Au Bon Pain*, 653

12

F.2d at 65)); *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 (NG) (MDG), 2014 WL 2594340, at *2 (E.D.N.Y. June 10, 2014) ("The phrase 'otherwise defend' has been interpreted to encompass situations including one in which a defendant 'fail[ed] to appear for a deposition, dismiss[ed his] counsel, [gave] vague and unresponsive answers to interrogatories, and fail[ed] to appear for trial.' The entry of default judgment was also held to be appropriate against a defendant who twice failed to respond, as directed, to plaintiff's pretrial submission.'" (first quoting *Au Bon Pain*, 653 F.2d at 65; and then citing *Cotton v. Slone*, 4 F.3d 176, 178-79 (2d Cir. 1993))).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sep. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sep. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sep. 29, 2023 (quoting *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)), *report and recommendation adopted*, Text Order dated Nov. 30, 2023. A court "possesses significant discretion" in granting a motion for default judgment, "including

13

[determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at \*7 (E.D.N.Y. Mar. 21, 2023) (citation modified).  The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at \*2 (E.D.N.Y. Aug. 23, 2010) (citation modified), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept 17, 2010).

In deciding whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (quoting *Enron Oil*, 10 F.3d at 96); *see also Trico Tarek Factor v. Jetax Inc.*, Nos. 24-CV-3731 (JMA) (ST), 24-CV-2409 (ST), 2025 WL 2625376, at \*29 (E.D.N.Y Sep. 11, 2025) ("Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether *granting* a default judgment is warranted in the first instance." (citing *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54-61 (E.D.N.Y. 2022))), *report and recommendation adopted*, No. 24-CV-3731 (JMA) (ST), 2025 WL 2782485 (E.D.N.Y. Sep. 30, 2025); *Lakers for Garmets & Made Clothes v. Jetax Inc.*, No. 24-CV-2226 (LDH) (ST), 2025 WL 3461453, at \*10 (E.D.N.Y. Sep. 17, 2025) (explaining *Enron* factors).  "Willfulness 'is the most significant factor' but is not dispositive." *Henry*, 108 F.4th at 52 (citing *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)); *see also Grp. One*, 625 F. Supp. 3d at 55 ("However, in neither case did the court find default judgment appropriate based solely on willfulness." (citations omitted)).

### B.        Plaintiff Is Entitled to Default Judgment

Here, Plaintiff has satisfied both steps required under Rule 55.   First, when Defendant did not respond, the Court directed Plaintiff to request a Certificate of Default.  *See* Text Order dated April 16, 2025.  After denying Plaintiff's request for Certificate of Default three times for failure to comply with Local Civil Rule 55.1 (*see* Dkt. Nos. 26-30; Text Order dated April 21, 2025; Text Order dated April 25, 2025; Text Order dated May 1, 2025), the Clerk of Court certified Plaintiff's fourth request for a Certificate of Default against Defendant.  *See* Dkt. Nos. 31-32. Plaintiff subsequently moved for default judgment.

Next, all of the *Enron* factors are met here.  As to the first *Enron* factor of willfulness, Chief Judge Margo K. Brodie summarized as follows:

> A default is willful if it is "'more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'"  *Bricklayers*, 779 F.3d at 186 (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)); *see also Jaramillo v. Vega*, 675 F. App'x 76, 76 (2d Cir. 2017) (same).  "Although more than mere negligence is required, 'the degree of negligence in precipitating the default is a relevant factor to be considered.'"  *Jaramillo*, 675 F. App'x at 76–77 (quoting *Green*, 420 F.3d at 108).  A default may be "satisfactorily explained" when it was caused by "a mistake made in good faith."  *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (quoting *Enron Oil Corp.*, 10 F.3d at 96); *see also Johnson v. N.Y.U.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018) ("[A] defendant's inadvertent mistake may be excusable." (quoting *Vedder Price P.C. v. US Cap. Partners, LLC*, No. 16-CV-6787, 2017 WL 4180021, at *3 (S.D.N.Y. Sept. 20, 2017))), *aff'd*, 800 F. App'x 18 (2d Cir. 2020).  In contrast, where a defendant provides no justification for the failure to respond or "deliberately fail[s]" to respond to the complaint, the defendant's default may be considered egregious and not satisfactorily explained. *Green*, 420 F.3d at 109 (finding default willful where the defendants "offered no explanation for their counsel's failure to appear or seek an extension of time to respond to the complaint" nor "any justification for their failure to take action after receiving notice that the clerk had entered a default against them"); *Johnson*, 324 F.R.D. at 70 (finding default egregious and not satisfactorily explained where the defendants "failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint" (quoting *McNulty*, 137 F.3d at 739)).

*Grp. One*, 625 F. Supp. 3d at 55.

As stated above, "where a defendant provides no justification for the failure to respond or 'deliberately fail[s]' to respond to the complaint, the defendant's default may be considered egregious and not satisfactorily explained." *Grp. One*, 625 F. Supp. 3d at 55 (citation omitted). In *In re Orion HealthCorp*, 95 F.4th at 104-05, the Second Circuit held that there was no error in finding that a defendant willfully defaulted where it failed to answer or respond to the claims against it in a bankruptcy proceeding despite having received proper service of process, and the purported owner of the defendant had been aware of the proceeding when he filed papers in an adversary proceeding that bore the caption of the bankruptcy case. Similarly, in *Group One*, 625 F. Supp. 3d at 55, the court found the defendants' conduct willful when the defendants failed to obtain new counsel pursuant to court orders, respond to the amended complaint, and respond to the default judgment motion.

Here, like *In re Orion HealthCorp* and *Group One*, Defendant's failure to respond to the Court's orders was willful and thus satisfies the first *Enron* factor. As demonstrated below, Defendant was properly served, and initially appeared in this action and filed an Answer and counterclaim. Dkt. Nos. 16, 18. Notwithstanding the Court's efforts (Text Order dated March 4, 2025; Minute Entry dated March 24, 2025; Text Order dated March 31, 2025; Text Order dated April 16, 2025), Defendant stopped responding after his counsel filed his Answer. Indeed, Defendant failed to appear, and has not attempted to defend this action, thus constituting willfulness in the context of default judgment.

The second *Enron* factor concerns whether entering the default judgment would prejudice the non-defaulting party. The Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence,

16

create increased difficulties of discovery or provide greater opportunity for fraud and collusion." *Henry,* 108 F.4th at 52-53.

The *Group One* case is illustrative. There, the defendants initially appeared through counsel and filed a motion to dismiss, which the court denied. *Grp. One*, 625 F. Supp. 3d at 44. The defendants' counsel then withdrew from the matter. *See id.* After the defendants failed to obtain new counsel as directed by the court, the court held that "Plaintiff will suffer prejudice if its motion [for default judgment] is denied because Plaintiff will be unable to recover against Defendants for the claims adequately set forth in its Amended Complaint." *Id.* at 60.

Likewise here, after Defendant's counsel withdrew, the Court *sua sponte* extended Defendant's time to inform the Court as to whether he was appearing *pro se* and warned Defendant of the consequences of non-compliance. Text Order dated March 4, 2025. After Defendant failed to appear at a court conference on March 24, 2025, the Court ordered Defendant to show cause as to why he failed to attend the conference and issued another warning. Minute Entry dated March 24, 2025. After Defendant failed to show cause on March 28, 2025, the Court again *sua sponte* extended the time for Defendant to show cause and provided Defendant another warning. Text Order dated March 31, 2025. To date, Defendant has failed to respond to the Court's myriad orders. At this juncture, Plaintiff will suffer prejudice if its motion for default judgment is denied because Plaintiff will be unable to recover against Defendant for claims adequately set forth in its Fourth Amended Complaint.

The final *Enron* factor of whether Defendant presented a meritorious defense is satisfied. The Second Circuit held that "[w]hether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *In re Orion HealthCorp*, 95 F.4th at 105. Where a party

17

initially raised defenses at an outset of the case, but later did not obtain counsel or otherwise defend the action, the court may "decline[]" to rely on the initial submissions because "these materials are not part of the default judgment record, and consist of unsworn statements and arguments, which are not evidence." *Grp. One*, 625 F. Supp. 3d at 57-58 (footnotes omitted) (citations omitted).

Although Defendant initially appeared through counsel and filed an Answer and counterclaim, Defendant has since absconded entirely from this action.  The Court need not consider the Answer and counterclaim as they are "not a part of the default judgment record, and consist of unsworn statements and arguments, which are not evidence." *Id.*[7]

Accordingly, all of the *Enron* factors weigh in favor of granting default judgment.

---

[7] Plaintiff did not move strike Defendant's Answer under Rules 16 and 37.  In the event that the Court intends to consider, *sua sponte*, striking the Answer on review of this Report and Recommendation, the undersigned respectfully recommends the Answer can be stricken from the docket.  When considering a motion for sanctions, courts evaluate the four factors from *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009): "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . non-compliance." *Maldonado v. Loxton, Inc.*, No. 20-CV-5776 (LDH) (RLM), 2022 WL 18858967, at *3 (E.D.N.Y. June 9, 2022) (citations omitted).  Although a *pro se* litigant is generally entitled to "special solicitude" before the district courts, they are not immune to the harshest discovery sanctions so long as a warning has been given that non-compliance can result in sanctions. *Guggenheim Cap.*, 722 F.3d at 452.  Here, Defendant's conduct is willful—the Court has issued clear orders, Defendant, despite initially appearing through counsel, failed to comply with repeated court orders, and his non-compliance was within Defendant's control because he did not pay his retainer.  Text Order dated November 1, 2024; Text Order dated February 12, 2025; Text Order dated March 4, 2025; Text Order dated March 19, 2025; Minute Entry dated March 24, 2025; Text Order dated March 31, 2025; Dkt. No. 21 ¶¶ 7-10; Dkt. No. 22.  Defendant has exhibited at least ten months of non-responsiveness. *Maldonado¸* 2022 WL 18858967, at *4 ("With regard to the duration of the period of non-compliance, a period as brief as a few months have been held to weigh in favor of dispositive sanctions . . . [a]nd periods of six months or more weigh even more heavily toward such remedies." (citations omitted)); *see also Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (affirming dismissal under Rule 37 where party violated discovery orders for three months and deliberately and persistently violated orders to produce documents and appear for depositions); *Icon Int'l Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 289 (S.D.N.Y. 2024) (weighing in favor of dismissal where plaintiff violated discovery orders for approximately four months).  The Court provided Defendant no less than three warnings that the failure to comply may result in an entry of default or default judgment.  Text Order dated November 1, 2024; Text Order dated February 12, 2025; Text Order dated March 4, 2025; Text Order dated March 19, 2025; Minute Entry dated March 24, 2025; Text Order dated March 31, 2025; Dkt. No. 21 ¶¶ 7-10; Dkt. No. 22.  Finally, Defendant's "persistent disregard" for court orders, "despite ample notice from the Court and opportunities to respond, shows that lesser sanctions would be futile in this case." *Maldonado*, 2022 WL 18858967, at *5 (citations omitted).

### C.    Jurisdiction and Venue

The Court "may not enter a default judgment unless it has both subject-matter jurisdiction over the action and personal jurisdiction over each defendant." *PHH Mortgage Corp. v. Khan*, No. 25-CV-02925 (DLI) (LGD), 2026 WL 41169, at *3 (E.D.N.Y. Jan. 6, 2026) (citing *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980)).

### i.    Subject Matter Jurisdiction

"[A] federal court has an independent obligation to determine whether subject-matter jurisdiction exists 'even in the absence of a challenge from any party.'" *Wilmington Sav. Fund Soc'y, FSB as Tr. of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) (citations omitted). "Courts must exercise heightened vigilance in the default judgment context, where courts lack the benefit of the adversarial process to reveal potential jurisdictional defects." *Id.*

Pursuant to 28 U.S.C. § 1332, district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Jurisdiction pursuant to 28 U.S.C. § 1332(a) requires complete diversity between all plaintiffs and defendants. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).

Plaintiff is a limited liability company "duly registered and doing business in the state of New York." Dkt. No. 47 ¶ 2. "For the purposes of establishing diversity jurisdiction, a limited liability company is a citizen of each state in which its individual members are citizens." *United*

*States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 409 (E.D.N.Y. 2020) (citing *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 122 (2d Cir. 2013)). Plaintiff "must identify both the LLC's members and their citizenship" to invoke this Court's diversity jurisdiction. *136-61 Roosevelt LLC v. Starbucks Corp.*, No. 21-CV-3560 (BMC), 2021 WL 2779287, at *1 (E.D.N.Y. July 2, 2021). The sole member of Weber Capital LLC, Mayer Weber, is a citizen of the state of New York. Dkt. No. 47 ¶ 5. Defendant is an individual citizen, who resides in the state of New Jersey. *Id.* ¶ 3. Further, Plaintiff seeks damages totaling $515,000, based on Defendant's breach of the UPGs plus costs. *Id.* ¶¶ 17-18.

Accordingly, the undersigned respectfully recommends a finding that the Court has subject matter jurisdiction over Plaintiff's claims.

### ii.    Personal Jurisdiction

While some courts of appeals require a district court to investigate its personal jurisdiction over a defendant before entering default judgment, the Second Circuit has held that a "a court *may* raise personal jurisdiction *sua sponte* when a defendant has failed to appear." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 n.7 (2d Cir. 2010) (citation omitted) (emphasis in original); *see also Martinez v. Golden Flow Dairy Farms Inc.,* No. 21-CV-2421 (ENV) (MMH), 2025 WL 3769328, at *3 (E.D.N.Y. Dec. 31, 2025) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s]." (quoting *Sinoying Logistics Pte*, 619 F.3d at 213)). District Courts within this Circuit have held that "[p]ersonal jurisdiction is a necessary prerequisite to entry of a default judgment." *Burns v. Scott*, 635 F. Supp. 3d 258, 273 (S.D.N.Y. 2022) (citation omitted); *see also Ryzhov v. Malofeyev*, No. 23-CV-1072 (JMF), 2024 WL 3498391, at *1 (S.D.N.Y. July 22, 2024)

20

(denying motion for default judgment where personal jurisdiction was lacking). In an abundance of caution, the undersigned will analyze personal jurisdiction.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 76 (2d Cir. 2023) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)); *see also EGI-VSR, LLC v. Huber*, No. 19-CV-6099 (ER), 2020 WL 1489790, at *5 (S.D.N.Y. Mar. 27, 2020) ("Courts have long recognized that because personal jurisdiction is premised on the Due Process rights of the parties, rather than the Article III powers of the judiciary, parties can consent to personal jurisdiction. Forum selection clauses and similar contractual provisions are common sources of that consent, and courts have held that contractual consent to personal jurisdiction eliminates the need for a separate Due Process analysis." (citations omitted)); *BST Corp. v. M.V Elliot Bay*, 443 F. Supp. 3d 436, 441 (S.D.N.Y. 2020) ("In addition to the customary bases for asserting personal jurisdiction, '[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.'" (citations omitted)).

Here, the $250,000 UPG and the $265,000 UPG both contain a forum selection clause where Defendant consented to the personal jurisdiction of the Court:

> Any legal action or proceeding with respect to this guaranty may be brought in the courts of the State of New York or of the United States of America for the Eastern District of New York, and, by execution and delivery of this guaranty, Guarantor hereby accepts generally and unconditionally, the jurisdiction of the aforesaid courts.

Dkt. No. 47 at 9, 13-14 (citation modified). Therefore, the Court may exercise personal jurisdiction over Defendant pursuant to the agreements.

### iii.    Service of Process

"It is axiomatic that to obtain a default judgment against a defendant, the pleading must have been properly served upon him." *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 460 (E.D.N.Y. 2022); *see also Joe Hand Promotions, Inc. v. Necessary Studios, Inc.*, No. 21-CV-5551 (LDH) (RER), 2022 WL 18858972, at *3 (E.D.N.Y. Dec. 5, 2022) ("Ineffective service-of-process is a ground to deny a motion for default judgment." (citation omitted)), *report and recommendation adopted*, Text Order dated Dec. 22, 2022; *G&G Closed Circuit Events, LLC v. Narine*, No. 20-CV-4271 (MKB) (RML), 2021 WL 7906548, at *2 (E.D.N.Y. Dec. 13, 2021) ("Before entering a default judgment, the court must consider the adequacy of the plaintiff's service of process on the defendant" (citation omitted)), *report and recommendation adopted*, 2022 WL 950449 (E.D.N.Y. Mar. 30, 2022).

Rule 4(e), which governs the service of individuals within the United States, allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Yang v. Fei*, No. 24-CV-5055 (RA) (KHP), 2026 WL 114933, at *2 (S.D.N.Y. Jan. 15, 2026) (citing Fed. R. Civ. P. 4(e)(1)).  Under New York law, service of process should be first attempted under C.P.L.R. § 308(1), (2), and (4), which "provide for service by personal delivery, delivery and mailing, and nailing and mailing, respectively." *Shim v. Luxury Asset Cap., LLC*, No. 24-CV-9738 (JPC), 2025 WL 3039958, at *1 (S.D.N.Y. Oct. 31, 2025) (quoting *Parisi v. Fretta*, 542 N.Y.S.2d 713, 714 (N.Y. App. Div. 1989)).  When C.P.L.R. § 308(1), (2), and (4) prove "impracticable," C.P.L.R. § 308(5) authorizes "nontraditional methods of service—such as electronic service." *Yang*, 2026 WL 114933, at *2 (citing N.Y. C.P.L.R. § 308(5)).  Impracticability generally "require[s] a factual showing that the plaintiff made genuine efforts to complete service using the CPLR's standard

22

methods and that those efforts were unsuccessful or infeasible." *Yang*, 2026 WL 114933, at *2 (citation omitted). "[P]laintiff must, for each of the three traditional methods of service, set forth factual allegations to establish, for example, what steps plaintiff had taken to effect service pursuant to the prescribed methods, when such steps were undertaken, and/or why such steps were not practicable under the particular facts and circumstances." *Id.* (citation omitted).

In sum, courts have permitted alternative service by electronic means, such as email, where other means of service under N.Y. C.P.L.R. § 308(1) (personal delivery), (2) (delivery and mail) and (4) (nail and mail) are "impracticable." *See, e.g.*, *id.* at *3-4 (permitting service by email alone); *Rauch Indus., Inc. v. Heart Artist LLC*, No. 25-CV-7950 (JHR) (GS), 2025 WL 3537848, at *6 (S.D.N.Y. Nov. 25, 2025) (same); *Shim*, 2025 WL 3039958, at *2 (same). "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *Yang*, 2026 WL 114933, at *3 (citation omitted); *see also Rauch Indus.*, 2025 WL 3537848, at *5 (quoting same); *Shim*, 2025 WL 3039958, at *2 (quoting same).

Here, based on Plaintiff's counsel's representations on October 27, 2024 that Defendant "has absconded from New Jersey and is now operating in Florida as the Infinite Financial Group," and "[t]here is no Florida address available either for [Defendant] or for this entity," Dkt. No. 12 at 1, service is rendered impracticable under CPLR § 308(1), (2), and (4). Accordingly, the undersigned permitted Plaintiff to serve Defendant by alternate means, to wit, by emailing a copy of the summons and complaint to Defendant. Text Order dated October 27, 2024. And Defendant did, in fact, initially appear in this action through counsel and file an Answer and counterclaim. Text Order dated November 27, 2024; Dkt. Nos. 16, 17, 18, 20, 21. In any event, Defendant's Answer and counterclaim did not challenge service of process, which means Defendant waived this argument. Dkt. No. 18. Under Rule 12(h), a party waives any defense listed under Rule

23

12(b)(2)-(5) by "failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1)(B)(i)-(ii).

The UPGs also set forth that Defendant "irrevocably consents to the service of process of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by certified mail, postage paid, to Defendant] at its [*sic*] address specified in this guaranty." Dkt. No. 47 at 10, 14 (citation modified). Plaintiff also mailed the summons and complaint to Defendant's Deepwater Circle address. Dkt. No. 12. Therefore, service of process was effectuated in this manner as well. *LCF Grp., Inc. v. Columbia Steel, Inc.*, No. 23-CV-7983 (JMA) (ST), 2024 WL 4393319, at *10 (E.D.N.Y. Sep. 17, 2024) (holding that "parties are free to contract around the statutory requirements for formal service," and "adherence to the agreed-upon terms of service properly effectuates service, regardless of receipt" (citations omitted)), *report and recommendation adopted*, 2024 WL 4390173 (E.D.N.Y. Oct. 3, 2024).

Therefore, the undersigned respectfully recommends that Defendant was properly served.

### iv.    Venue

Under 28 U.S.C. § 1391(b)(2)-(3), a civil action may be brought in "a judicial district in which a substantial part of the events . . . occurred; or . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Here, venue is proper for a few reasons. As stated in the Fourth Amended Complaint, Defendant consented to the jurisdiction and venue of this District "in any action [b]rought or arising through or under the UPG sued upon herein." Dkt. No. 47 ¶ 9. The UPGs executed by Defendant state, in relevant part, that "any legal action or proceeding with respect to this guaranty may be brought in the courts

24

of the State of New York or of the United States of America for the Eastern District of New York."
*Id.* at 9, 13-14.

Moreover, the UPGs state that "Guarantor hereby irrevocably waives, in connection with any such action or proceeding, . . . any objection to the laying of venue or based on the grounds of forum non conveniens" of New York State courts or the U.S. District Court for the Eastern District of New York. *Id.* at 9-10, 13-14. Accordingly, the undersigned respectfully recommends a finding that venue is proper in this District. *See David Benrimon Fine Art LLC v. Son*, No. 23-CV-2614 (JHR) (SDA), 2025 WL 3162079, at *3 (S.D.N.Y. Aug. 8, 2025) ("Venue is proper in this Court based upon the forum selection clause contained in the relevant agreement. A forum selection clause in a contract constitutes consent to venue in the chosen forum." (first citing *Remsen Funding Corp. v. Ocean W. Holding Corp.*, No. 06-CV-15265 (DLC), 2007 WL 3254403, at *4 (S.D.N.Y. Nov. 1, 2007); and then citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007))), *report and recommendation adopted*, 2025 WL 3001839 (S.D.N.Y. Oct. 27, 2025).

### v.    Procedural Compliance

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Fin. Servs. Vehicle Tr. v. Osmanaj*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023)

25

(quotations and citation omitted), *report and recommendation adopted*, Text Order dated Sep. 11, 2023.

Local Civil Rule 55.2 provides, in relevant part,

(a) In addition to following the applicable procedures in either (b) or (c) below, any party seeking a default judgment must file:

(1) an affidavit or declaration showing that:

(A) the clerk has entered default under Local Civil Rule 55.1;

(B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521; and

(C) the party against whom judgment is sought is not known to be a minor or an incompetent person . . . . .

(2) if proceeding by motion, the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order detailing the proposed judgment to be entered; and

(3) a certificate of service stating that all documents in support of the request for default judgment, including the "Clerk's Certificate of Default" and any papers required by this rule, have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought.

. . .

(c) By the Court (available under Fed. R. Civ. P. 55(b)(2)).  In addition to the matters required in section (a), above, the party must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs.

Loc. Civ. R. 55.2.

Here, Plaintiff properly obtained the certificate of default against Defendant under Local Civil Rule 55.2(a)(1)(A).  Although Defendant initially appeared in this case, Defendant has repeatedly ignored multiple Court orders and deadlines, as described above.  *See* Text Order dated March 4, 2025; Minute Entry dated March 24, 2025; Text Order dated March 31, 2025; Text Order

dated April 16, 2025.  The Court has repeatedly warned Defendant of potential sanctions and an entry of a notation of default against him should he fail to respond to Court orders.  *See* Text Order dated March 4, 2025; Text Order dated March 24, 2025; Text Order dated March 31, 2025.  After denying Plaintiff's request for a Certificate of Default three times for failure to comply with Local Civil Rule 55.1, *see* Dkt. Nos. 10, 26-30; Text Order dated April 21, 2025; Text Order dated April 25, 2025; Text Order dated May 1, 2025, the Clerk of Court certified Plaintiff's fourth request for a Certificate of Default against Defendant on May 2, 2025.  *See* Dkt. Nos. 31-32.

Local Civil Rule 55.2(a)(1)(B) requires that "the party seeking default judgment has complied with the [SCRA]."  The SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co., Inc. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).

First, Plaintiff filed an affidavit by Mr. Jacob Weis, a business associate of Defendant, which states that Defendant "is not in the military service or any branch thereof."  Dkt. No. 34.  Second, Plaintiff includes a printout from the Department of Defense Manpower Data Center—an entity that hosts the SCRA verification website—showing no results for Defendant.  Dkt. Nos. 36, 50.  Case law establishes that this is adequate to demonstrate that Defendant was not engaged in military service pursuant to the SCRA.  *See Fernandez*, 712 F. Supp. 3d at 333 (holding that

"[a]dequate proof might consist of a report from the Department of Defense's website obtained after the defendant's default certifying that the defendant is not in active military service."); *ADI Glob. Distrib. v. Green*, No. 20-CV-3869 (AMD) (JMW), 2023 WL 3355049, at \*3 (E.D.N.Y. Apr. 24, 2023) ("Certification . . . of a defendant's military status [under 50 U.S.C. § 3931(A)] can be obtained from the Department of Defense's Servicemembers Civil Relief Act website." (citation omitted)), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). Accordingly, the undersigned respectfully recommends that Plaintiff be found to have satisfied the SCRA requirements.

Plaintiff's counsel has complied with Local Civil Rule 55.2(a)(1)(C) by filing an attorney declaration, that "[u]pon information and belief, Defendant is not an infant or an incompetent person." Dkt. No. 52 ¶ 5. Further, as discussed in footnote 2, *supra*, Local Civil Rule 55.2(b) is inapplicable because Plaintiff is not seeking a default judgment by the Clerk, but rather the Court.

Next, Local Civil Rule 55.2(a)(2) requires any party moving for a default judgment to file "the papers required by Local Civil Rule 7.1, including a memorandum of law, [and] a proposed order detailing the proposed judgment to be entered." Loc. Civ. R. 55.2(a)(2). Local Civil Rule 7.1(a) requires that a plaintiff attach to a motion for default judgment (1) a notice of motion specifying the applicable rules or statutes pursuant to which the motion is brought; (2) a memorandum of law setting forth the cases and other authorities relied upon in support of the motion; and (3) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion. *See* Loc. Civ. R. 7.1(a). In addition, a party seeking default judgment from the court must file "a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed

28

damages and the basis for each element of damages, including interest, attorney's fees, and costs." Loc. Civ. R. 55.2(c).

Plaintiff complied with the procedural requirements set forth in Local Civil Rules 55.2(a)(2) and 7.1(a) by filing a notice of motion (Dkt. No. 40), a proposed order (Dkt. No. 40-10), a memorandum of law (Dkt. No. 40-9), and affidavits and exhibits (Dkt. Nos. 40-1–40-8) in support of the motion. Plaintiff also included a page count certification statement, as required by Local Civil Rule 7.1(c). Dkt. No. 40-9 at 5. Plaintiff also filed the required sworn statement of damages under Local Civil Rule 55.2(c). Dkt. Nos. 40-6, 49. The undersigned respectfully recommends that Plaintiff is found to have complied with the requirements of Local Civil Rules 55.2(a)(2), 7.1 and 55.2(c).

Last, Plaintiff has filed the requisite certificate of service of the "Clerk's Certificate of Default," and any papers required by this rule, which were mailed to the last known Deepwater Circle address pursuant to Local Civil Rule 55.2(a)(3). Dkt. Nos. 40-4 (Clerk's Certificate of Default); 40-11 (Certificate of Service); 51 (Affirmation of Service by Mail); 52 (Attorney's Supplemental Declaration in Support of Motion for Default Judgment). Accordingly, the undersigned respectfully recommends that Plaintiff be found to have met the procedural requirements to proceed with his motion.

***

Accordingly, a default judgment is proper here against Defendant.

### III.    Liability

Having considered that Defendant has defaulted, the Court next considers whether Plaintiff has adequately alleged liability.

29

In a default judgment case, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup*, 973 F.2d at 158; *Mickalis Pawn Shop*, 645 F.3d at 137 ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint" (citation modified)). Furthermore, the Court is "required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Greyhound Exhibitgroup.*, 973 F.2d at 158.

"To state a breach of contract claim under New York law a plaintiff must allege: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Liberty Mut. Ins. Co. v. Palace Car Servs. Corp.,* No. 06-CV-4881 (FB) (CLP), 2007 WL 2287902, at *1 (E.D.N.Y. Aug. 8, 2007) (citing *Terwilliger v. Terwilliger,* 206 F.3d 240, 245-46 (2d Cir. 2000)); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015).

Here, Plaintiff adequately alleges each element of liability. First, Plaintiff has demonstrated the existence of a contract between himself and Defendant, exhibited by the signed UPGs. Dkt. No. 47 at 6-14. Those signed agreements memorialize the personal guaranty at issue, which Plaintiff further described in the Fourth Amended Complaint. *See id.* ¶¶ 10-14. Second, Plaintiff has successfully pleaded his own performance of the contract as he provided confirmation of wire transfers totaling $515,000 to ABL and NVG, a company connected with ABL pursuant to the PPM. *See* Dkt. Nos. 40-7, 40-8, 41-1, 41-2, 49; *see also* Dkt. No. 47 ¶ 10; *id.* at 7, 13 ("FOR VALUE RECEIVED from [Plaintiff], or an entity designated thereby with an address of 199 Lee Ave #900 Brooklyn New York 11211 (creditor), and to induce creditor to enter into a purchase and investment agreement of certain stocks held by [ABL] pursuant to a [PPM], Michael

30

Racaniello, with an address at 76 Deepwater Circle, Manalapan, New Jersey 07726"). Third, Plaintiff sufficiently alleges that Defendant breached the UPGs by failing to reimburse Plaintiff's investment by the deadlines set forth in the UPGs or upon Plaintiff's demand, pursuant to the UPGs executed by Defendant. *See* Dkt. No. 47 ¶¶ 15-19; Dkt. No. 40-9 at 3. Finally, Plaintiff alleges compensatory damages and costs resulting from Defendant's failure to reimburse Plaintiff's investment in the amount of $515,000 due to Defendant's breach of contract. *See* Dkt. No. 47 ¶¶ 15-19; Dkt. No. 40-6; Dkt. No. 40-10 at 2 (seeking $402 in costs).

In light of Defendant's default, Plaintiff's allegations—accepted as true per *Greyhound Exhibitgroup*, 973 F.2d at 158, and its progeny—are sufficient to establish that Defendant is liable for breach of contract for the purposes of entry of default judgment. *See Ajna Living, LLC v. Digit. Accessories TCM Ltd.*, No. 22-CV-3127 (PKC), 2023 WL 3255466, at *3 (S.D.N.Y. May 4, 2023) (finding defendants liable for breach of contract for entry of default judgment under similar circumstances); *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG) (RLM), 2022 WL 704127, at *5 (E.D.N.Y. Mar. 9, 2022) (finding defendant liable for breach of contract for entry of default judgment under similar circumstances); *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB) (RML), 2022 WL 18558800, at *2 (E.D.N.Y. Dec. 19, 2022) (finding allegations in complaint sufficient to establish liability for breach of contract on a default judgment motion), *report and recommendation adopted*, 2023 WL 1766282 (E.D.N.Y. Feb. 3, 2023); *Constellation Newenergy, Inc. v. Om Vegetable, Inc.*, No. 22-CV-03766 (LJL), 2022 WL 3334707, at *3 (S.D.N.Y. Aug. 12, 2022) (imposing liability on defaulting defendants for breach of contract).

## IV.    Damages[8]

### A.    Legal Standard

"Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty." *Paypolitan OU v. Marchesoni*, No. 21-CV-5397 (RA) (RWL), 2022 WL 17541091, at *4 (S.D.N.Y. Aug. 26, 2022) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)), *report and recommendation adopted*, 2022 WL 17541749 (S.D.N.Y. Dec. 6, 2022). "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158 (citation omitted). "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (citation modified).

Under Rule 54(c), "[a] default judgment must not differ in kind from, or exceed the amount, that is demanded in the pleadings." *Mickalis Pawn Shop*, 645 F.3d at 128 n.16 (quoting Fed. R. Civ. P. 54(c)); *see also Trs. of Metal Polishers Loc. 8aA-28A Funds v. Nu Look Inc.*, No. 18-CV-3816 (PKC) (RLM), 2020 WL 6370146, at *3 (E.D.N.Y. Feb. 14, 2020) ("[Rule 54(c)] limits a plaintiff's default judgment recovery to the relief sought in the complaint, and "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"

---

[8] Plaintiff did not submit a request for attorney's fees or pre-judgment interest in either his motion or his proposed judgment, *see* Dkt. Nos. 40, 40-10, despite requesting attorney's fees and pre-judgment interest in the Fourth Amended Complaint. Dkt. No. 47 ¶ 18. Plaintiff's updated declaration confirmed that he is not seeking attorney's fees. Dkt. No. 37 at 1; Dkt. No. 40-6 at 2 ("Plaintiff waives any claim for pre-judgment interest and attorney's fees."). Any prior claim for attorney's fees is therefore deemed abandoned.

32

(citations omitted)), *report and recommendation adopted*, 2020 WL 5793204 (E.D.N.Y. Sep. 29, 2020).  Unless the number of damages is certain, a court entering default judgment is required to make an independent determination of the sum it awards.  Fed. R Civ. P. 55(b)(2)(B).

Once liability is established, "the court must ascertain damages with 'reasonable certainty.'"  *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2019 WL 4439347, at *2 (E.D.N.Y. Sep. 17, 2019) (citation omitted).  "An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded." *Id.* (citation omitted); *see also Fernandez*, 712 F. Supp. 3d at 330 ("The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment").  "The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested."  *CIT Bank N.A.*, 2019 WL 4439347, at *2 (citation modified).

## B.  Claimed Damages

As Defendant's liability has been established with respect to Plaintiff's breach of contract claim, the Court turns to evaluate damages.

Here, Plaintiff asserts that it is entitled to compensatory damages in the amount of $515,000.  *See* Dkt. No. 47 ¶¶ 10-19;; Dkt. No. 40-9 at 4; Dkt. No. 49 ¶¶ 3-6, 8.  In support of the request, Plaintiff attached confirmation of wire transfers to ABL and NVG.  Dkt. Nos. 40-6; 40-7; 40-8; 49.  The payments total $515,000: a payment made on October 30, 2020 for $100,000 to NVG (Dkt. No. 40-7); a second payment made on October 30, 2020, for $150,000 to NVG (Dkt. No. 40-8); a third payment made on February 4, 2021, for $200,000 to ABL (Dkt. No. 41-1 at 3); and a fourth payment made on February 8, 2021, for $65,000 to ABL (*id.*).  Plaintiff represents

that Defendant has failed to reimburse Plaintiff's $515,000 investment, as agreed upon in the UPGs.  Dkt. No. 47 ¶ 16; Dkt. No. 40-9 at 3-4.

Upon review of the documents filed in support of Plaintiff's claimed damages, the undersigned confirms that the $515,000 investment amount under the UPGs equals the amount of compensatory damages requested by Plaintiff.  The undersigned thus respectfully recommends an award of $515,000 to Plaintiff for the damages incurred as a result of Defendant's breach of the UPGs.  *See Cont'l Cas. Co. v. Contest Promotions NY, LLC,* No. 15-CV-501 (MKB) (PK), 2016 WL 1255726, at *6 (E.D.N.Y. Mar. 28, 2016) (awarding damages for breach of contract based on the plaintiff's submissions); *La Salteña S.A.U. v. Ercomar Imports Internacional Corp.*, No. 21-CV-4675 (KAM) (LB), 2024 WL 2319622, at *8 (E.D.N.Y. May 22, 2024) (same); *see also Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *3 (E.D.N.Y. June 11, 2021) (awarding damages on the plaintiff's submission without hearing and stating "[a]n inquest on damages by affidavit, without an in-person hearing, may be conducted as long as the court can ensure a basis for the damages specified in the default judgment" (quotation marks and citations omitted)).

### C.    Costs

Plaintiff seeks "costs of this action, and for such other relief as the Court deems just and proper."  Dkt. No. 40 at 1; Dkt. No. 40-9 at 4.  In Plaintiff's Proposed Order and Judgment, and in Mayer Weber's declaration, Plaintiff requests costs in the amount of $402.  *See* Dkt. No. 40-10 at 2.  Plaintiff did not include any documentary support for an award of costs.

Federal courts sitting in diversity jurisdiction look to Rule 54(d)(1) to calculate costs, which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P.

34

54(d)(1); *see also BASF Corp.*, 2022 WL 704127, at \*9; *Arch Specialty Ins. Co. v. B & V Constr. Inc.*, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at \*7 (E.D.N.Y. Apr. 23, 2024) ("Filing fees and costs for service are appropriately reimbursable as litigation costs."). "Filing fees are recoverable without supporting documentation if verified by the docket." *US All. Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 665 (E.D.N.Y. 2023) (Donnelly, J.) (collecting cases). Here, the docket indicates that Plaintiff paid the $405 filing fee. *See* Dkt. No. 1; *see also Camillo v. Khim's Millennium Mkt., Inc.*, No. 22-CV-7846 (AMD) (PK), 2025 WL 951265, at \*17 (E.D.N.Y. Mar. 13, 2025) (taking judicial notice of the filing fee), *report and recommendation adopted*, 2025 WL 948125 (E.D.N.Y. Mar. 28, 2025). Therefore, Plaintiff is entitled to costs and disbursements in the requested sum of $405. *See Dunston v. Babushka LLC*, No. 24-CV-2969 (OEM) (JAM), 2025 WL 2980857, at \*5 n.3 (E.D.N.Y. Oct. 22, 2025) (awarding $405 in costs for the filing fee even though the plaintiff's billing statement states $402 in a default judgment motion because the docket confirms this payment), *report and recommendation adopted*, Text Order dated Nov. 12, 2025.

Notwithstanding the absence of any additional documentary support, the undersigned respectfully recommends that Plaintiff be awarded $405 for the cost of the filing fee for this action.

### D.    Post-Judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a). The Second Circuit has consistently held that post-judgment interest, as governed by federal statute, is mandatory. *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008); *see Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at \*3 (E.D.N.Y. Mar. 29, 2011) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory

in any civil case where money damages are recovered"), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).

Therefore, this Court respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015).

## V.    Rule 41 Dismissal of Defendant's Counterclaim

In Defendant's Answer, Defendant asserts the following counterclaim:

> The subject alleged guarantees are void due to the action or inaction of Plaintiff as alleged in the Amended Complaint.
>
> WHEREFORE, Defendants [*sic*] request that the Court enter judgment:
>
> a. dismissing the Plaintiff's Complaint in its entirety;
>
> b. granting its costs and attorneys' fees;
>
> c. for a declaratory Judgment that the alleged guarantees are null and void
>
> d. and/or unenforceable
>
> e. granting such other relief as the Court may deem just and proper.

Dkt. No. 18 at 6-7 (citation modified). While Plaintiff's motion for default judgment does not outright request dismissal of Defendant's counterclaim, Plaintiff's declaration filed in support of

36

his motion for Default Judgment states that Defendant's counterclaim is without merit because "Defendant's unconditional personal guaranty overrides [it] and compels repayment [of Plaintiff's investment]." *See* Dkt. No. 40-6 ¶ 7. Even so, Plaintiff does request "such other relief as the Court may deem just and proper." Dkt. No. 40 at 1; Dkt. No. 40-1 at 2; Dkt. No. 40-9 at 4. As discussed below, the undersigned respectfully recommends that the Court dismiss Defendant's counterclaim, pursuant to Rule 41.

Rule 41(b) provides that a case may be involuntarily dismissed if a plaintiff "fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b); *see also Schwartz v. AMF Bowling Ctrs., Inc.*, No. 19-CV-7096 (WFK) (JAM), 2025 WL 1682269, at *3-4 (E.D.N.Y. June 16, 2025), *report and recommendation adopted*, 2025 WL 1826568 (E.D.N.Y. July 2, 2025); *Nielsen v. J.C. Penny Co., Inc.*, No. 23-CV-5619 (JGLC) (HJR), 2025 WL 868495, at *2 (S.D.N.Y. Mar. 20, 2025), *report and recommendation adopted*, 2025 WL 1265807 (S.D.N.Y. Apr. 30, 2025). Although dismissal under Rule 41(b) is subject to the discretion of the district courts, the Second Circuit has stated that a Rule 41(b) dismissal is a "harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citation omitted).

Before exercising its discretionary authority to dismiss for failure to prosecute, a district court "considering a Rule 41(b) dismissal must weigh five factors":

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)).  No single factor is dispositive.  *See id.* (citing *Nita v. Conn. Dep't of Env't. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994)).

"While the Second Circuit has cautioned that *pro se* plaintiffs should be granted special leniency regarding procedural matters, courts in this district have recognized that . . . even *pro se* litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the Court gives warning."  *Zeigler v. Annucci*, No. 23-CV-707 (KMK), 2025 WL 1056904, at *2 (S.D.N.Y. Apr. 8, 2025) (citation modified).

"Rule 41 applies with equal force 'to a dismissal of any counterclaim, crossclaim, or third-party claim.'"  *Rsch. Found. for State Univ. of N.Y. v. Telluric Labs, LLC*, No. 21-CV-1898 (JS) (SIL), 2023 WL 6307995, at *6 (E.D.N.Y. Sep. 28, 2023) (quoting Fed. R. Civ. P. 41(c)); *see Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp.*, No. 19-CV-6524 (DLI) (ST), 2024 WL 5399245, at *10 (E.D.N.Y. Aug. 30, 2024) (applying Rule 41(c) to analyze dismissal of counterclaims under Rule 41(b) framework).

Here, the five *Baptiste* factors require dismissal of the counterclaim due to Defendant's failure to prosecute this action.

With respect to the first *Baptiste* factor, the duration of Defendant's failure to prosecute his counterclaim has been egregious.  Defendant has engaged in over ten months of dilatory conduct since he first failed to inform the Court whether he wished to proceed *pro se*, and has continued to be unavailable to the Court, including missing court appearances and failing to show cause for his missing appearances.  *See, e.g.*, Text Order dated February 12, 2025 (the Court granting Defendant's former counsel's motion to withdraw, and directing Defendant to inform the Court whether he wishes to appear *pro se* in this matter going forward); Dkt. No. 22 (Plaintiff's counsel

38

serving a copy of the February 12, 2025 court order on Defendant); Text Order dated March 4, 2025 (the Court *sua sponte* extended time for Defendant to respond until March 14, 2026 after his previous failure to respond, which the Court served on Defendant);  Text Order dated March 19, 2025 (scheduling the telephonic initial status conference for March 24, 2025); Dkt. No. 23 (indicating service of the Text Order dated March 19, 2025 on Defendant); Minute Entry dated March 24, 2025 (the Court held an initial status conference in which Plaintiff appeared and Defendant failed to appear, and directing Defendant to show cause by March 28, 2025 as to why he failed to appear); Text Order dated March 31, 2025 (*sua sponte* extending Defendant's time to show cause as to why he failed to appear at the March 24, 2025 conference until April 8, 2025); Dkt. No. 25 (Plaintiff indicating that Defendant has "failed to either move or appear on at least four separate occasions").  It is well established in this Circuit that a delay of several months can warrant dismissal.  *See Yadav v. Brookhaven Nat'l Lab.*, 487 F. App'x 671, 673 (2d Cir. 2012) ("[Plaintiff's] dilatory conduct extended for only three months, we have noted that a delay of a matter of months can potentially warrant dismissal.") (citation modified); *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013) (finding that dismissal is appropriate in seven months if defendant is completely inaccessible, as this conduct strongly suggests plaintiff is not diligently pursuing their claim); *Dong v. United States*, No. 02-CV-7751 (SAS), 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004) (finding that, "the very fact that Dong has been inaccessible for the last two months—without notifying the Court, the Government, or the *Pro Se* Office of a change of address—strongly suggests that he is not diligently pursuing this claim"); *Hibbert v. Apfel*, No. 99-CV-4246 (SAS), 2000 WL 977683, at *2 (S.D.N.Y. July 17, 2000) (holding that six months of inaction by plaintiff justifies dismissal of an action).

With respect to the second *Baptiste* factor, the Court has adequately put Defendant on notice that failure to comply with Court orders could result in dismissal. *See Hunter v. N.Y. State Dep't of Corr. Servs.*, 515 F. App'x 40, 43 (2d Cir. 2013) (holding that two notices that an action could be dismissed was sufficient notice); *see also* Text Order dated March 4, 2025 (the Court *sua sponte* extended time to respond to the Court's order provided an unambiguous warning that Defendant's "failure to abide by Court orders may result in sanctions against him, including entry of a notation of default," which was served on Defendant); Minute Entry dated March 24, 2025 (Defendant failed to appear at a court conference, the Court directed Defendant to show cause and issued a warning that "[f]ailure to comply with this order may result in a report and recommendation that default judgment be entered against [Defendant] in this action," which was served on Defendant); Text Order dated March 31, 2025 (upon Defendant's failure to show cause, the Court *sua sponte* extended time and provided another unambiguous warning that, "[Defendant] is again advised that failure to comply with this and other of the Court's Orders will result in sanctions against him, including possibly default judgment," which was served on Defendant).

These Orders provided explicit notice to Defendant that his failure to show cause, appear at conferences, prosecute, and comply with Court orders would result in default judgment. *See Hunter*, 515 F. App'x at 43; *Velt Corp. v. United States*, No. 19-CV-5463 (MKB) (ST), 2020 WL 8413513, at *3 (E.D.N.Y. Dec. 7, 2020) (finding that failure to comply with three orders to file a status report warranted dismissal), *report and recommendation adopted*, 2020 WL 7639962 (E.D.N.Y. Dec. 23, 2020).

With respect to the third *Baptiste* factor, Defendant's failure to appear allows the Court to presume as a matter of law that Plaintiff will be prejudiced by further delay. *Tankersley v. City of New York*, No. 19-CV-3359 (MKB), 2021 WL 5013620, at *3 (E.D.N.Y. Oct. 26, 2021); *see Rubin*

40

*v. Abbott Lab'ys*, 319 F.R.D. 118, 121 (S.D.N.Y. 2016) (finding that the longer the litigation process takes, "the less likely it is that critical witnesses will be available" (citing *Yang v. Greyhound Lines, Inc.*, No. 07-CV-6499 (CM), 2008 WL 3126188, at *2 (S.D.N.Y. July 14, 2008))). "Prejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable. In cases where 'delay is more moderate or excusable, the need to show actual prejudice is proportionally greater.'" *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 256 (2d Cir. 2004) (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)). *Lyell* is instructive, as it upheld a presumption of prejudice against a defendant when plaintiff repeatedly failed to provide documents that the Court ordered, even after repeated warnings that dismissal could result. 682 F.2d at 39-40, 43. As in *Lyell*, Defendant here has been repeatedly warned that failure to show cause or otherwise respond to Court orders could result in sanctions against him, including an entry of default. *See, e.g.*, Text Order dated March 4, 2025; Minute Entry dated March 24, 2025; Text Order dated March 31, 2025. Accordingly, Defendant's failure to heed the Court's orders and drive his counterclaim forward permits the Court to presume prejudice to Plaintiff.

With respect to the fourth *Baptiste* factor, the Court must weigh the administrative burden placed on the Court's docket by stagnant cases, such as Defendant's, with Defendant's right to due process and fair chance to be heard. *See Rubin*, 319 F.R.D. at 121; *Baptiste*, 768 F.3d at 216. In making this determination, courts "look at whether a litigant has been given an opportunity 'to be heard on the issue of failure to prosecute'" and compare that to, "plaintiff's 'interest in prosecuting [its] case.'" *Velt Corp.*, 2020 WL 8413513, at *3 (first quoting *Martens v. Thomann*, 273 F.3d 159, 182 (2d Cir. 2001); and then quoting *Caussade*, 293 F.R.D. at 631). When considering docket congestion, the Second Circuit has stated that "[t]here must be compelling evidence of an extreme

41

effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Baptiste*, 768 F.3d at 218-19 (quoting *Lucas*, 84 F.3d at 535-36).

Despite having repeatedly been notified of this Court's orders, Defendant has ignored them, thus demonstrating a clear lack of interest in pursuing his counterclaim. *See Caussade*, 293 F.R.D. at 631 (holding that failure to respond to repeated requests from the Court weighs in favor of granting a Rule 41(b) motion to dismiss for failure to prosecute); *Velt Corp.*, 2020 WL 8413513, at *3 (finding that "Plaintiff has shown no interest in litigating his case, there is no efficacious option but dismissal"). Moreover, Defendant has had ample opportunity to be heard, as evidenced by the Court's repeated grants of *sua sponte* extensions of his time to respond and directions to the Clerk of Court that Defendant be served with the Court's orders at his physical address and via email. *See* Text Order dated March 4, 2025; Minute Entry dated March 24, 2025; Text Order dated March 31, 2025. Accordingly, in the face of Defendant's clear lack of interest in prosecuting his counterclaim, the balance tips in favor of alleviating the administrative burden and congestion that stagnant cases, such as this one, place on the Court's docket.

The final *Baptiste* factor compels the Court to consider whether lesser sanctions are available to remedy prejudice resulting from Defendant's delay. *See Baptiste*, 768 F.3d at 216. Courts in this Circuit have repeatedly held that when litigants fail to respond to the Court or their own lawyer, no sanction short of dismissal is likely to rectify the issues created by the plaintiffs' absences. *See Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857 (AMD) (LKE), 2024 WL 4593424, at *3 (E.D.N.Y. Oct. 28, 2024) (explaining that a "lesser sanction is unlikely to remedy the prejudice resulting from [the plaintiff's] delay and failure to comply with court orders"); *Copiel v. Pugliese*, No. 19-CV-4231 (MKB) (LB), 2021 WL 2792182, at *3 (E.D.N.Y. Apr. 29, 2021) (noting that "when a plaintiff fails to respond to a Court order once threatened with dismissal, it is

42

unlikely that a lesser sanction will result in reengagement in a matter" (citations omitted)), *report and recommendation adopted as modified*, 2021 WL 2659985 (E.D.N.Y. June 29, 2021).  Courts have also raised the practical concern that "no lesser sanction would be effective" because the non-responsive plaintiff would be "unaware that any sanction had been imposed." *See Blake v. Payane*, No. 08-CV-0930 (PAC) (PED), 2011 WL 7163172, at *2 (S.D.N.Y. Mar. 11, 2011) (citation omitted).

Defendant's lack of interest in this case, as evidenced by over ten months of unresponsiveness, shows that a lesser sanction would likely have no effect.  *See Rogers v. Villafane*, No. 12-CV-3042 (CBA) (MDG), 2013 WL 3863914, at *3 (E.D.N.Y. July 24, 2013) ("There is no indication that a lesser sanction, such as a fine, would be effective, given the plaintiff's failure to take any action for several months to indicate an interest in pursuing this case.").  Accordingly, the undersigned respectfully recommends that Defendant's counterclaim, as outlined in Dkt. No. 18, be dismissed under Rule 41(b) for failure to prosecute.

Further, the dismissal should be with prejudice as Defendant's conduct was willful, and Defendant was given at least three warnings that the failure to comply with court orders may result in the case ending sanctions of entry of default or default judgment.  *See* Text Order dated March 4, 2025 ("his failure to abide by Court orders may result in sanctions against him, including entry of a notation of default"); Minute Entry dated March 24, 2025 ("Failure to comply with this order may result in a report and recommendation that default judgment be entered against Mr. Racaniello in this action"); Text Order dated March 31, 2025 ("Mr. Racaniello is again advised that failure to comply with this and other of the Court's Orders will result in sanctions against him, including possibly default judgment"); *see also Zeigler*, 2025 WL 1056904, at *2 ("While the Second Circuit has cautioned that *pro se* plaintiffs should be granted special leniency regarding procedural

43

matters, courts in this district have recognized that . . . even *pro se* litigants must prosecute claims diligently, and dismissal *with prejudice* is warranted where the Court gives warning." (citation modified)); *Thompson v. Bk Venture Grp. Ltd.*, No. 22-CV-470 (HG) (RML), 2023 WL 6796392, at *1-2 (E.D.N.Y. Oct. 13, 2023) (dismissing *pro se* complaint with prejudice where the court "unambiguously warned the *pro se* Plaintiffs that if any of them failed timely to respond to that order [directing *pro se* plaintiffs to file letters stating whether they intend on participating in the case along with providing the court with the most updated contact information], then the Court would likely dismiss their claims with prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure"); *Henry v. Prishtina Constr. Designs, Inc.*, No. 17-CV-5041 (ILG) (RER), 2018 WL 5984866, at *1-2 (E.D.N.Y. Oct. 22, 2018) (recommending dismissal of *pro se* plaintiff's complaint with prejudice under Rule 41 where plaintiff ceased communication with counsel leading to counsel's withdrawal from the case, failed to appear at a deposition, missed a court conference, and was warned repeatedly that continued absence would result in a recommendation of dismissal), *report and recommendation adopted*, 2018 WL 5983378 (E.D.N.Y. Nov. 14, 2018).[9]

## VI.    Conclusion

The undersigned respectfully recommends that default judgment be entered in favor of Plaintiff against Defendant, in the principal amount of $515,000, as well as $405 in costs, plus

---

[9] Alternatively, the undersigned respectfully recommends that dismissal of Plaintiff's counterclaim with prejudice is warranted under Rule 37. As discussed above, Plaintiff meets all of the *Agiwal* factors, including willfulness, and Plaintiff was given no less than three warnings. *See Agiwal*, 555 F.3d at 303 (affirming the District Court's dismissal with prejudice where the plaintiff's "failure to appear at three scheduled depositions, amounted to 'sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders . . . would result in the dismissal of [the] action.'" (citation omitted)); *see also Burgin v. Seals-Nevergold*, No. 21-2512-CV, 2022 WL 12111217, at *1 (2d Cir. Oct. 21, 2022) ("Whether evaluated under Rule 37 or Rule 41(b), the district court did not abuse its discretion by dismissing the case with prejudice instead of imposing a lesser sanction."); *Workneh v. Super Shuttle Int'l, Inc.*, No. 15-CV-3521 (ER) (RWL), 2020 WL 3492000, at *8 (S.D.N.Y. June 8, 2020) (discussing the "substantial overlap of the factors considered under both Rule 37(b)(2)(A) and Rule 41(b)," and "all relevant factors weigh in favor of dismissal of the case with prejudice"), *report and recommendation adopted*, 2020 WL 3489483 (S.D.N.Y. June 26, 2020).

post-judgment interest.    The undersigned also respectfully recommends that Defendant's counterclaim be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and email to Defendant and to file proof of service on ECF by February 6, 2026.

Copies shall be served at the following mail and e-mail addresses:

Michael Racaniello
76 Deepwater Circle
Manalapan, New Jersey 07726

michael@nassvalleygateway.com
mike@infinite-lifegroup.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Komitee.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York
              February 5, 2026                    **SO ORDERED.**

                                                    /s/ Joseph A. Marutollo
                                                  JOSEPH A. MARUTOLLO
                                                  United States Magistrate Judge

45